IN RE CALUMET BREWING COMPANY: CALUMET COUNTY and another, Appellants, vs. BAUMANN, Assignee, Respondent.

*May 19—June 16, 1943.*

For the appellants there were briefs by *F. J. Schmieder,* district attorney of Calumet county, *Helmuth F. Arps* of Chilton, attorney for the Chilton Malting Company, attorneys, and *Harold M. Wilkie* of Madison of counsel, and oral argument by *Mr. Wilkie* and *Mr. Schmieder.*

*George M. Goggins* and *Anthony E. Madler,* both of Chilton, for the respondent.

WICKHEM, J.   Calumet Brewing Company, Inc., a Wisconsin corporation, on August 2, 1938, executed to Chilton Malting Company a real-estate mortgage on its plant at Chilton, Wisconsin, to secure a series of notes aggregating the principal sum of $23,500.   On February 24, 1942, mortgagor being in default on notes aggregating $6,000 of principal, together with some interest and taxes, quitclaimed the premises to the mortgagee by deed containing a covenant on part of the grantor "to pay all real-estate taxes now unpaid, levied, and assessed against the above-described real estate . . . and to indemnify and save harmless the grantee from all obligation to pay the same."   In consideration of the covenants the grantee discharged the mortgage, and released the mortgagor from all liability on the indebtedness secured.   In addition, it agreed to permit the grantor to occupy the premises free of rent until April 24, 1942, with an option in the grantor to repurchase the premises for $20,000.   On March 7, 1942, Calumet Brewing Company, Inc., made an assignment for the benefit of creditors under ch. 128, Stats., and on the same day, A. P. Baumann was appointed as assignee. The assignment scheduled as liabilities the following real-estate taxes

upon the real estate involved in the mortgage and deed heretofore mentioned:

| | | | | | | |
|---|---|---|---|---|---|---|
| Chilton City, Real Estate Taxes, | | | | | 1938 | $360.00 |
| " | " | " | " | " | 1939 | 342.00 |
| " | " | " | " | " | 1940 | 342.00 |
| " | " | " | " | " | 1941 | 342.80 |

On July 31, 1942, Calumet county filed a petition praying that the assignee pay to Calumet county the delinquent real-estate taxes in the sum of $1,662.16. At that time the county held tax certificates for the delinquent taxes for the years 1938, 1939, and 1940, and in addition taxes for 1941 were delinquent in the amount of $361.82. Thereafter, the Chilton Malting Company asked leave to intervene in the petition. Its interest in the matter is apparent. Its real estate is subject to sale for delinquent taxes. As between it and the assignor, the latter is bound by its covenants to pay these taxes and to hold the Chilton Malting Company harmless. The Chilton Malting Company seeks to have this claim treated as a preferred claim for taxes under sec. 128.17 (1) (d), Stats. This section provides the order of distribution of the debtor's estate upon an assignment for the benefit of creditors. The prescribed order of distribution is as follows:

"(a) The actual and necessary costs of preserving the estate subsequent to the commencement of the proceedings.

"(b) Costs of administration including a reasonable attorney's fee for the representation of the debtor.

"(c) Wages due to workmen, clerks, traveling or city salesmen or servants, which have been earned within three months before the date of the commencement of the proceedings not to exceed six hundred dollars to each claimant.

"(d) Taxes, assessments, and debts due the United States or this state, or any county, district or municipality. . . ."

It is the contention of appellants that the real-estate taxes above referred to are taxes due the county and are to be paid under sec. 128.17 (1) (d), Stats., after items described in

pars. (a), (b), and (c) are fully paid and before the payment of dividends to general creditors. We are of the opinion that the trial court correctly determined that this contention is not sound. We reach this conclusion because, in our view, the taxes here involved are not due in the statutory sense. The Calumet Brewing Company, Inc., does not owe these taxes in the sense that any action for their collection may be prosecuted against it. While under sec. 74.10, where a taxpayer shall refuse or neglect to pay the tax imposed upon him the treasurer may levy the same by distress and sell any goods or chattels belonging to such person, this is far from establishing a liability on the part of the owner for real-estate taxes returned as delinquent. We pass the question whether sec. 74.10 applies to real-estate taxes and assume that it does. The only right to distrain is in the town, village, or city treasurer, and by no process of construction can it be in the county treasurer after return. Even the local treasurer is limited to distress and cannot reduce the claim to judgment. In *Nelson v. Gunderson,* 189 Wis. 139, 141, 207 N. W. 408, it was said: "An action in debt in this state will lie for taxes on personal property only." In *Central Wisconsin Trust Co. v. Swenson,* 222 Wis. 331, 333, 267 N. W. 307, this court said: "It is true that a landowner is not personally liable for the taxes imposed upon his land." Wisconsin follows the doctrine that a real-estate tax is not a debt. We are of the view that in situations where the taxes referred to in par. (d) are neither debts of the assignor nor liens upon real estate which has come to the assignee under the assignment, the taxes are not due and owing in the statutory sense.

Appellants rely to a considerable extent upon the fact that sec. 128.16, Stats., was repealed in 1937. This section, so far as material, provided:

"But before making any dividend the assignee shall pay all taxes assessed upon the property assigned, which remain unpaid, and the compensation due all laborers, servants and employees for labor or personal services performed for the

assignor within the six months next preceding the making of the assignment, the claims for which shall be paid by him next after the payment of unpaid taxes and assessments, debts due the United States or this state, the expenses of the assignment and the execution of the trusts."

The contention is that prior to the repeal of this section priority was limited to taxes on the property assigned, whereas under sec. 128.17 (1) (d), Stats., as amended, all taxes, assessments, and debts due have a fixed priority without respect to whether the taxes are on property assigned. These conclusions from the enactments of 1937 appear to us not to be valid. The provisions of sec. 128.16 were sufficiently confusing in form as to make possible the argument that the only taxes entitled to preference were those assessed upon property assigned. Sec. 128.17 (1) (d) makes it clear that the priority includes all taxes *due* the United States, the state, county, district, or municipality. It could with as much reason be argued that sec. 128.17 (1) (d) destroyed the priority of tax claims upon property assigned in which there was no other liabilty than the tax lien, since that was virtually a secured claim, than that the statute meant to include in par. (d) taxes on real estate neither passing by the assignment nor constituting debts of the assignor. However, we shall not determine this point.

The claim is made that sec. 128.17 (1) (d), Stats., obviously followed the Bankruptcy Act but that it considerately omitted that portion of sec. 64a, American Bankruptcy Act, 11 USCA, sec. 104, which provides "that no order shall be made for the payment of a tax assessed against real estate of a bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court." It is argued that the legislature must be supposed by reason of this omission to have intended to give priority to real-estate taxes against real estate of the bankrupt even if the amount of the taxes is in excess of the interest of the estate in the land. We

consider that the most that could be claimed by reason of the omission is that real-estate taxes on land coming to the assignee as property of the bankrupt would be entitled to the priority given by sec. 128.17 (1) (d). Whether this is true need not be decided because there was no debt owing from the assignor and the real estate in question did not pass to the assignee. There is nothing on which sec. 128.17 (1) (d) could operate.

It is claimed that the covenants of the Calumet Brewing Company, Inc., to pay these taxes are contracts for the benefit of Calumet county. We shall not examine this contention because even if it were true, the county as beneficiary would not be in the position of a taxing authority with a tax claim but that of a contractor having no statutory right to priority. The Chilton Malting Company, of course, is not in the position of subrogee of Calumet county, although this is probably not a matter of any consequence in view of what has heretofore been said. It has not, so far as the record shows, paid these taxes. What we have here is a claim of the Malting Company against the Calumet Brewing Company, Inc., arising out of a breach of covenant by the latter. The fact that the covenant relates to the payment of taxes appears to us to be of no importance. The trial court correctly disposed of the case.

*By the Court.*—Order affirmed.